## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Heather Anderson, on
behalf of herself and similarly situated,

                Plaintiffs,

v.

Phil Murphy, in his official capacity as
Governor of New Jersey; Elizabeth Maher
Muio, in her official capacity as New Jersey
State Treasurer; Gurbir S. Grewal, in his
official capacity as New Jersey Attorney
General; International Brotherhood of
Electrical Workers, Local 33

                Defendants.

**Case No.:**

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1.  On June 27, 2018, the Supreme Court held the First Amendment guarantees public employees a right to not subsidize a union and its speech. *Janus v. AFSCME, Council* 31, 138 S. Ct. 2448, 2486 (2018). The State of New Jersey prohibits employees who previously authorized union dues deductions from exercising this First Amendment right except during annual ten-day escape periods. N.J. Stat. Ann. § 52:14-15.9e. The State and the International Brotherhood of Electrical Workers, Local 33, violate employees' First Amendment rights by enforcing this prohibition against them—i.e., by seizing payments for union speech from dissenting employees who object to dues deduction outside of the ten-day escape period. Plaintiff Heather Anderson, an attorney in the New Jersey Attorney General's Office who is having payments for union speech seized from her wages over her objections, seeks for herself and sim-

ilarly situated employees declaratory relief, injunctive relief, and compensatory damages to remedy Defendants' violations of her First Amendment rights and those of other state employees.

## PARTIES

2.   Plaintiff Heather Anderson resides in Camden County, New Jersey and works in Mercer County, New Jersey as a deputy attorney general in New Jersey's Department of Law and Public Safety.

3.   Defendant International Brotherhood of Electrical Workers ("IBEW"), Local 33 is a labor organization headquartered at 19 Embassy Drive, Cherry Hill, New Jersey, 08002.

4.   Defendant Phil Murphy is the Governor of the State of New Jersey, and is sued in his official capacity. The Governor is vested with executive power for the State of New Jersey, which includes authority to supervise all principal departments of the State. N.J. Const. Art. V, §§ I(1), IV(2). The Governor's office address is P.O. Box 001, Trenton, New Jersey, 08625.

5.   Elizabeth Maher Muio is the New Jersey State Treasurer and is sued in her official capacity. The State Treasurer is the administrator and head of New Jersey's Department of the Treasury. *See* N.J. Stat. Ann. § 52:18a-2. The State Treasurer's has an office at 50 West State Street, Trenton, NJ 08608.

6.   Gurbir S. Grewal is the New Jersey Attorney General and is sued in his official capacity. The Attorney General is New Jersey's chief law enforcement officer and is the head of New Jersey's Department of Law and Public Safety. The Attorney General

has an office at 25 Market Street, Box 080, Trenton, NJ 08625-0080.

7. The term "State Defendants" refers collectively to Governor Murphy, State Treasurer Muio, and Attorney General Grewal in their official capacities.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to adjudicate this case pursuant to 28 U.S.C. § 1331 because it arises under the United States Constitution, and 28 U.S.C. § 1343 because Plaintiffs seek relief under 42 U.S.C. § 1983. This Court has the authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief based thereon.

9. Venue is proper under 28 U.S.C. § 1391 because Defendants all reside in this judicial district, the Plaintiff resides in this judicial district, and events giving rise to the claims occurred within this judicial district.

## FACTS

**A. The State of New Jersey Prohibits State Employees from Exercising Their First Amendment Right to Stop Subsidizing Union Speech Except During a Ten-Day Escape Period.**

10. At all relevant times, New Jersey Statute Annotated Section 52:14-15.9e has required that State disbursing officers shall, if they receive written authorization from an employee, deduct union dues from employee's compensation and remit those monies to the union.

11. Prior to May 18, 2018, Section 52:14-15.9e provided that:

Any such written authorization may be withdrawn by such person holding employment at any time by the filing of notice of such withdrawal with the above-mentioned disbursing office. The filing of notice of withdrawal shall be effective to halt deductions as of the January 1 or July 1 next succeeding the date on which notice of withdrawal is filed.

N.J. Stat. Ann. § 52:14-15.9e (prior to amendment by P.L. 2018, c.15, § 6, eff. May 18,

2018). The statute also provided that a "collectively negotiated agreement may also include a provision specifying the effective date of a termination in deductions as of the July 1 next succeeding the date on which notice of withdrawal is filed by an employee with the public employer's disbursing officer." *Id*.

12. Effective May 18, 2018, New Jersey amended Section 52:14-15.9e in the so-called "Workplace Democracy Act" to, among other things, prohibit employees from stopping the deduction of union dues from their wages except during an annual ten-day escape period. Section 52:14-15.9e now states, in part:

> Employees who have authorized the payroll deduction of fees to employee organizations may revoke such authorization by providing written notice to their public employer during the 10 days following each anniversary date of their employment. Within five days of receipt of notice from an employee of revocation of authorization for the payroll deduction of fees, the public employer shall provide notice to the employee organization of an employee's revocation of such authorization. An employee's notice of revocation of authorization for the payroll deduction of employee organization fees shall be effective on the 30th day after the anniversary date of employment.

N.J. Stat. Ann. § 52:14-15.9e (as amended by P.L. 2018, c.15, § 6, eff. May, 18, 2018). However, a "collectively negotiated agreement may also include a provision specifying the effective date of a termination in deductions as of the July 1." *Id*. Hereinafter, this restriction shall be referred to as Section 52:14-15.9e's escape period restriction.

13. The Department of the Treasury, acting in coordination with State entities that employ State employees, operates the State's payroll system for most State employees, pays most State employees' their wages and compensation, and makes deductions from that compensation. N.J. Stat. Ann. § 52:14-15 − 52:14-15b. This includes deducting union dues from employees' wages under Section 52:14-15.9e.

14. On information and belief, the dues deduction authorization forms the State generally uses and enforces as evidence of employee consent to union dues deductions under Section 52:14-15.9e are on forms, or are based on forms, developed and approved by the Department of the Treasury. *See* N.J. Stat. Ann. § 52:14-15.8.

15. Dues deduction authorization forms signed by State employees before May 18, 2018, and some dues deduction forms signed by State employees after that date, did not include terms stating the signatory agreed that he or she could revoke the authorization only by providing written notice during ten-days prior to the anniversary date of his or her employment.

16. On information and belief, the dues deduction authorization forms the State uses and enforces do not include terms that notify employees that they have a First Amendment right not to subsidize a union and its speech or that state the employee agreed to waive that constitutional right by signing the form.

17. The State, by and through the Department of the Treasury and State entities that employ State employees, enforces Section 52:14-15.9e's escape period restriction by continuing to seize union dues from State employees who provide notice, or want to provide notice, of their opposition to paying union dues outside of the prescribed ten-day escape period. These State employees are compelled, as a condition of their employment, to continue to subsidize union speech against their wishes and in violation of their First Amendment right to not subsidize union speech.

**B. The State Enforces Its Escape Period Restriction Against Plaintiff**

18. Since on or around October 2010, IBEW Local 33 has been the exclusive representative of State employees in the "Deputy Attorneys General Unit," which consists of deputy attorney generals employed by the State Department of Law and Public Safety, subject to certain exclusions.

19. The State and IBEW Local 33 were parties to collective bargaining agreements governing the Deputy Attorneys General Unit effective July 1, 2013 to June 30, 2015 ("2013-15 CBA") and effective July 1, 2015 to June 30, 2019 ("2015-19 CBA"), and are currently parties to a collective bargaining agreement governing the unit effective from July 1, 2019 to June 30, 2023 ("2019-23 CBA").

20. All three collective bargaining agreements include a provision at Article VII(1)(a) that states, in relevant part, "the State agrees to deduct from the regular paycheck of any employee, by automatic payroll deduction, dues of the union provided the employee submits an authorization for dues deduction in writing and in proper form to the responsible payroll clerk."

21. The 2013-15 CBA and 2015-19 CBA also included a provision at Article VII(1)(b) that restricted when employees could stop dues deductions that stated, in relevant part: "DAsG [Deputy Attorneys General] shall be eligible to withdraw such authorization only as of July 1 of each year provided the notice of withdrawal is filed timely with the responsible payroll clerk. Unless a DAG withdraws authorization for the deduction of Union dues, the State will continue the deductions."

22. Consistent with the May 18, 2018 amendments to Section 52:14-15.9e, Article

VII(1)(b) of the 2019-23 CBA states in relevant part that:

> The authorization of dues deductions shall remain in full force and effect during the term of a DAG's employment, unless properly withdrawn. In order to withdraw from a dues deduction authorization a DAG must submit a written request to withdraw from the Union to the responsible payroll clerk within ten (10) days following each anniversary date of his/her employment. Once the responsible payroll clerks receives the request, they will notify the Union within five (5) business days. The properly filed withdrawal will be effective on the thirtieth (30) day after the anniversary date of the DAG's employment.

23. The 2013-15 CBA and 2015-19 CBA also included "representation fee (agency shop)" provision at Article VII(2) that required, in relevant part, that "[a]ny employee in the negotiated unit on the effective date of this Agreement who does not join the Union within thirty (30) days thereafter shall pay a representation fee in lieu of dues to the Union by automatic payroll deduction for services rendered by the majority representative." This representation fee requirement was authorized by New Jersey Statute Annotated Sections 34:13A-1-5.6 to 5.8.

24. Plaintiff Heather Anderson is a deputy attorney general employed by the State in the Department of Law and Public Safety. Anderson is subject to IBEW Local 33's exclusive representation and to its collective bargaining agreements with the State.

25. At a time prior to May 2018, Anderson signed an IBEW membership form and potentially a State dues deduction form because she was informed that she would have to pay union fees even if she did not authorize dues deductions. The form(s) Anderson signed did not include terms stating that she agreed that she could stop dues deductions only by providing written notice during ten-days prior to the anniversary date of his or her employment. The form(s) also did not notify Anderson that

7

she had a First Amendment right not to subsidize a union and its speech or state that the she agreed to waive that constitutional right.

26. On June 27, 2018, the Supreme Court in *Janus* held that the First Amendment guaranteed public employees a right to not pay for union speech and that States and unions could not deduct or collect payments for union speech from employees without clear and compelling evidence that the employees' waived that First Amendment right. 138 S. Ct. at 2486.

27. Anderson does not want to financially support IBEW Local 33 or its speech. Her attempts to exercise her First Amendment right under *Janus* to stop paying for that speech has been frustrated by Section 52:14-15.9e's escape period restriction, as detailed below.

28. In an email from Anderson to IBEW Local 33 President Andrew Reese dated November 14, 2019, Anderson wrote "[p]lease provide instructions on how to withdraw from the union. Thank you." Reese responded with an email the next day stating that "[y]our email is enough. Can I ask why you're withdrawing, and right when we're focusing our efforts on negotiating our next contract?" Anderson responded the same day with "[p]ersonal choice. Thank you."

29. On December 5, 2019, Reese sent a follow up email to Anderson that stated: "Hi Heather. The State has told us that members are not able to withdraw from the union unless they make the request within 10 days after their anniversary date, as set forth in the Workplace Democracy Act. But hopefully you will consider staying in the union after seeing our raises for the next contract."

8

30. The State and IBEW Local 33 continued to seize union dues from Anderson's wages, over her objections, pursuant to Section 52:14-15.9e and the 2019-23 CBA.

31. In an email from Anderson to Reese dated July 22, 2020, Anderson wrote "[p]lease withdraw me from the union. Thank you." Reese responded with an email to Anderson dated July 30, 2020 that referenced to and attached his December 2019 email, which stated that "[t]he State has told us that members are not able to withdraw from the union unless they make the request within 10 days after their anniversary date, as set forth in the Workplace Democracy Act."

32. The State and IBEW Local 33 continued to seize union dues from Anderson's wages, over her objections, pursuant to Section 52:14-15.9e and the 2019-23 CBA.

33. In a letter dated and sent by email on February 10, 2021, Anderson provided notice to IBEW Local 33 and her state employer that she resigned her union membership, revoked any deduction authorization she may have signed, and did not consent to the deduction of any union dues or fees from her wages. The letter is attached as Exhibit A and is incorporated herein.

34. On February 12, 2021, an IBEW Business Manager responded to Anderson's letter with an email to Kathleen Dollard, a human resources administrator and payroll supervisor with the State Department of Law and Public Safety, that stated: "Dear Ms. Dollard, Please see attached letter from DAG Anderson. Please cease deducting dues from her paycheck. Local 33 takes no position as to whether or not this Deputy followed the requirements of the Work Place Democracy Act." The email is attached as Exhibit B and incorporated herein.

35. On February 12, 2021, two State officials notified Anderson in separate emails that the State would not honor Anderson's request to stop dues deductions because the request was not made within the ten-day period mandated by the 2019-23 CBA. Specifically, Kathleen Dollard responded to Anderson's letter with an email stating:

> Good Morning Ms. Anderson: As per the IBEW Union Contract, in order to withdraw from the Union you need to notify the union within 10 days of your New Hire Anniversary date. Please note, your new hire date is August 4, 2003, therefore you will need to withdraw from the Union within 10 days of August 4, 2021. I have attached the proper form for you to complete and returned within those 10 specific days. Thank you.

Melica Blige, an employee relations administrator with the State Department of Law and Public Safety, sent an email to Anderson that stated in relevant part:

> Per the Memorandum of Agreement between the State of NJ and the IBEW Local 33, in order to withdraw from a dues authorization, a DAG must submit a written request to withdraw within ten days following his/her anniversary date of employment. According to our records your anniversary date is 8/4/03. Kindly resubmit your request, for removal from the union, between August 5, 2021 through August 15, 2021. Upon receipt of your request, your withdrawal will be effective on the 30th day after your anniversary date.

A copy of these emails are attached as Exhibit C and incorporated herein.

36. After February 10, 2021, the State and IBEW Local 33 continued to seize union dues from Anderson's wages, over her repeated objections, pursuant to Section 52:14-15.9e and the 2019-23 CBA.

37. On information and belief, the State and IBEW Local 33 will continue to seize union dues from Anderson's wages pursuant to Section 52:14-15.9e and the 2019-23 CBA unless she provides notice of her objection to dues deductions to the State between August 5 and 15, 2021, in which case the seizures may stop on September 3, 2021.

38. The State and IBEW Local 33, by seizing union dues from Anderson over her objections, compelled and continue to compel Anderson to subsidize union speech as a condition of her employment and in violation of her First Amendment right to not that subsidize that speech.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this case on her own behalf and on behalf of two classes of similarly situated employees:

(a) a "Deputy Attorneys General" class of all State employees in Deputy Attorneys General Unit who are subject or become subject to the escape period restriction authorized by Section 52:14-15.9e and/or Article VII(1)(b) of the 2019-23 CBA, or any similar provision in a subsequent agreement; and

(b) an "Objecting State Employee" class that consists of all State employees who had or are having union dues seized from their wages by the State Defendants after providing notice to the State that they opposed those seizures outside of the ten-day escape period prescribed by Section 52:14-15.9e.

Alternatively, Plaintiff requests certification of the class or subclass the Court deems appropriate.

40. The number of persons in the proposed classes makes joinder of the individual members impractical. The number of persons in the Deputy Attorneys General class is around 350 individuals. On information and belief, the State deducts union dues from around 45,000 State employees each year. Joining all such State employees who fit the Objecting State Employee class definition would be impractical because,

among other reasons, more individuals may continually come within the class defini-
tion during the pendency of this litigation.

41. There are questions of fact and law common to all Deputy Attorneys General
class members. Factually, all are subject to the same escape-period restriction on
when they can exercise their First Amendment right to not subsidize union speech.
The dispositive question of law is the same for the Plaintiffs and Deputy Attorneys
General members: does the escape-period restriction violate the employees' First
Amendment rights to not subsidize union speech?

42. There are questions of fact and law common to all Objecting State Employee
class members. Factually, all are State employees who suffered injury as a result of
Section 52:14-15.9e escape period restriction—i.e., the State seized payments for un-
ion speech seized from all of these employees over their objections because of Section
52:14-15.9e. The dispositive question of law is the same for the Plaintiffs and Object-
ing State Employee class members: does it violate the First Amendment for the State
to enforce Section 52:14-15.9e escape period restriction against them and seize pay-
ments for union speech from them over their objections?

43. Plaintiff's claims are typical of the claims of the Deputy Attorneys General
and Objecting State Employee class members' claims because all claims concern
whether the State violates the First Amendment by seizing payments for union
speech from employees who object, or want to object, to those seizures outside the ten-
day escape period prescribed by Section 52:14-15.9e.

44. Plaintiff will adequately represent the interests of the proposed classes and

has no interests antagonistic to the class.

45. Both proposed classes can be maintained under Rule 23(b)(1)(A) because separate actions by Deputy Attorneys General and/or Objecting State Employee members concerning the constitutionality of Section 52:14-15.9e's escape period restriction and Defendants' enforcement of that restriction would risk inconsistent adjudications that could establish incompatible standards of conduct for the Defendants.

46. Both proposed classes can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of Section 52:14-15.9e's escape period restrictions and Defendants' enforcement of that restriction will, as a practical matter, be dispositive of the interests of all Deputy Attorneys General and/or Objecting State Employee members or substantially impair or impede their ability to exercise their First Amendment rights.

47. The Deputy Attorney General class can be maintained under Rule 23(b)(2) because, by maintaining and enforcing Section 52:14-15.9e's escape period restriction, Defendants have acted or refused to act on grounds that apply generally to members of the Deputy Attorneys General class, so that final injunctive or declaratory relief is appropriate for class members as a whole.

48. The Objecting State Employee class can also be maintained against the State Defendants under Rule 23(b)(2) because the State Defendants, by maintaining and enforcing Section 52:14-15.9e's escape period restriction, has acted or refused to act on grounds that apply generally to Objecting State Employee class members, so that final injunctive or declaratory relief is appropriate for that class as a whole.

## CAUSES OF ACTION

49. Plaintiff realleges and incorporates by reference the paragraphs set forth above in each Count of her Complaint.

50. The State Defendants act under color of state law, including Section 52:14-15.9e, when deducting union dues from Anderson and other State employees' wages and by maintaining and enforcing Section 52:14-15.9e's escape period restrictions.

51. IBEW Local 33 acts under color of state law, including Section 52:14-15.9e, by causing the State Defendants to deduct union dues from Anderson and certain other State employees' wages, by collecting the monies so deducted, and by entering into a collective bargaining agreement with the State that incorporates and requires the State to enforce Section 52:14-15.9e's escape period restrictions against Anderson and certain other State employees.

52. IBEW Local 33 is a state actor because it acts jointly with the State, pursuant to the parties' 2019-23 CBA, to deduct and collect union dues from Anderson and certain other State employees' wages and to enforce Section 52:14-15.9e's escape period restrictions against Anderson and certain other State employees.

## COUNT I

### (Individual and Deputy Attorney General class members' First Amendment claim against all Defendants)

53. Section 52:14-15.9e's escape period restriction and Article VII(1)(b) of the 2019-23 CBA prohibit Anderson and members of Deputy Attorney General class from exercising their First Amendment right to stop subsidizing IBEW Local 33 and its speech except for during an annual ten-day escape period—i.e, for 355-56 days of each

year. Section 52:14-15.9e's escape period restriction and Article VII(1)(b) of the 2019-23 CBA thereby compel Anderson and members of Deputy Attorney General class to, as a condition of their employment, continue to subsidize IBEW Local 33 and its speech, even if they do not want to subsidize that speech, until both the ten-day escape period is satisfied and additional days elapse.

54. Defendants, by maintaining and enforcing Section 52:14-15.9e's escape period restriction and Article VII(1)(b) of the 2019-23 CBA against Anderson and members of the Deputy Attorney General class, violate those individuals' First Amendment right to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

55. Anderson and members of Deputy Attorney General class are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

56. Anderson and members of Deputy Attorney General class did not clearly, knowingly, intelligently, or voluntarily waive their First Amendment right to stop subsidizing IBEW Local 33 and its speech except for during a ten-day annual escape period. Moreover, any purported waiver by Anderson and members of Deputy Attorney General class to this restriction on their exercise of their First Amendment rights would be unenforceable as against public policy because the interest against enforcing this onerous restriction—individuals' First Amendment right to not pay for speech they do not want to support—greatly outweighs any purported interest in its enforcement.

57. Section 52:14-15.9e's escape period restriction is unconstitutional on its face or, alternatively, as applied to Anderson and members of the Deputy Attorney General class.

## COUNT II

### (Individual and Objecting State Employee class members' First Amendment claim against the State Defendants)

58. The State Defendants, by seizing payments for union speech from Anderson and Objecting State Employee class members' over their objections because those objections were made outside of the ten-day escape period prescribed by Section 52:14-15.9e, compel those individuals to subsidize a union and its speech as a condition of their employment and against their will.

59. The State Defendants, by seizing payments for union speech from Anderson and Objecting State Employee class members' over their objections because those objections were made outside of the ten-day escape period prescribed by Section 52:14-15.9e, violate those individuals First Amendment right to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

60. Anderson and members of Objecting State Employee class are suffering the irreparable harm and injury inherent in a violation of First Amendment rights, for which there is no adequate remedy at law.

61. Anderson and members of Objecting State Employee class did not clearly, knowingly, intelligently, or voluntarily waive their First Amendment right to stop subsidizing union speech except for during a ten-day annual escape period. Moreover,

any purported waiver by Anderson and members of Objecting State Employee class to this restriction on their exercise of their First Amendment rights would be unenforceable as against public policy because the interest against enforcing this onerous restriction—individuals' First Amendment right to not pay for speech they do not want to support—greatly outweighs any purported interest in its enforcement.

62. Section 52:14-15.9e's escape period restriction is unconstitutional on its face or, alternatively, as applied to Anderson and members of the Objecting State Employee class.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court:

A.  Issue a declaratory judgment that: (1) Section 52:14-15.9e's escape period restriction is unconstitutional under the First Amendment, on its face or alternatively as applied, and is unenforceable; (2) Article VII(1)(b) of the 2019-23 CBA is unconstitutional under the First Amendment and is unenforceable; (3) State Defendants violate or violated the First Amendment by seizing payments for union speech from Anderson and members of the Objecting State Employees class; and (4) IBEW Local 33 violates or violated the First Amendment by seizing payments for union speech from Anderson over her objections.

C.  Permanently enjoin the State Defendants from enforcing Section 52:14-15.9e's escape period restriction, which includes enjoining the State Defendants from: (1) maintaining and enforcing Article VII(1)(b) of the 2019-23 CBA and other terms of collective bargaining agreements that incorporate Section 52:14-15.9e's escape period

restriction and (2) seizing union dues from Anderson and members of the Objecting State Employees class.

D. Order IBEW Local 33 to pay compensatory damages to Anderson for the union dues it seized from her over her objections, plus interest;

E. Award Anderson and class members' nominal damages;

F. Award Plaintiffs their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorneys' Fees Award Act of 1976, 42 U.S.C. § 1988; and

G. Grant other and additional relief as the Court may deem just and proper.

Date: April 28, 2021

*Michael P. Laffey*
Michael P. Laffey
222 Highway 35
2nd Floor
Red Bank NJ 07701
Tel (732) 642-6784
mplaffeylaw@gmail.com


and

William L. Messenger (Va. Bar. 47179)
  (Pro Hac Vice Motion to be filed)
James C. Devereaux (Ut. Bar. 15121)
  (Pro Hac Vice Motion to be filed)
National Right to Work Legal Defense
  Foundation
8001 Braddock Road, Suite 600
Springfield, VA 22160
Tel (703) 321-8510
wlm@nrtw.org
abs@nrtw.org

*Attorneys for Plaintiffs*

# Exhibit A

Via Electronic Mail

IBEW Local 33
c/o Andrew Reese
19 Embassy Drive
Cherry Hill, NJ 08002

Gurbir S. Grewal
Attorney General of New Jersey
P.O. Box 112
Trenton, NJ 08625

Matthew Ciuffini
Kathleen Dollard
Human Resources
P.O. Box 112
Trenton, NJ 08625

To Whom It May Concern:

I, Heather Lynn Anderson, hereby notify the IBEW Local 33 ("Union"), and my employer, the State of New Jersey, Office of the New Jersey Attorney General, Division of Law ("Employer"), of the following:

If you consider me a member of the Union, I hereby resign from the Union and all of its affiliates, effective immediately.

You do not have my affirmative consent to take any money in union dues or fees from my paychecks. If you believe I have given consent before, that consent is revoked, effectively immediately. I hereby revoke any prior dues/fees checkoff authorization I may have signed.

This notification is permanent and continuing in nature, unless and until I tell you otherwise. Under Janus v. AFSCME, No. 16-1466, 585 U.S. ___ (2018), I insist that you immediately stop deducting any and all union dues or fees from my paychecks.

If you refuse to accept this letter as revoking any prior checkoff authorization, please promptly inform me, in writing, of exactly what steps I must take to effectuate that revocation and stop the deduction of dues/fees for the Union from my paychecks.

Please reply promptly to my request. The further exaction of union dues or fees from me will violate my rights under the United States Constitution and the New Jersey Constitution.

Sincerely yours,

Heather Lynn Anderson
Dated: 2/10/21

Exhibit B

**From:** Anna Lascurain <Anna.Lascurain@law.njoag.gov>
**Sent:** Friday, February 12, 2021 10:19 AM
**To:** Kathleen Dollard <Kathleen.Dollard@njoag.gov>; Melica Blige <Melica.Blige@njoag.gov>
**Cc:** Andrew Reese <Andrew.Reese@law.njoag.gov>; Heather Anderson <Heather.Anderson@law.njoag.gov>
**Subject:** DAG Andeson

Dear Ms. Dollard,

Please see attached letter from DAG Anderson.  Please cease deducting dues from her paycheck.

Local 33 takes no position as to whether or not this Deputy followed the requirements of the Work Place Democracy Act.

Thank you.

Anna M. Lascurain
Business Manager
CONFIDENTIALITY NOTICE The information contained in this communication from the Office of the New Jersey Attorney General is privileged and confidential and is intended for the sole use of the persons or entities who are the addressees. If you are not an intended recipient of this e-mail, the dissemination, distribution, copying or use of the information it contains is strictly prohibited. If you have received this communication in error, please immediately contact the Office of the Attorney General at (609) 292-4925 to arrange for the return of this information.

1

Exhibit C

**From:** Kathleen Dollard <Kathleen.Dollard@njoag.gov>
**Sent:** Friday, February 12, 2021 11:04 AM
**To:** Heather Anderson <Heather.Anderson@law.njoag.gov>
**Cc:** Andrew Reese <Andrew.Reese@law.njoag.gov>; Anna Lascurain <Anna.Lascurain@law.njoag.gov>; Melica Blige <Melica.Blige@njoag.gov>; Matthew Ciuffini <Matthew.Ciuffini@njoag.gov>; Connie Wilson <Connie.Wilson@njoag.gov>
**Subject:** IBEW Payroll deductions - Heather Anderson

Good Morning Ms. Anderson:

As per the IBEW Union Contract, in order to withdraw from the Union you need to notify the union within 10 days of your New Hire Anniversary date.

Please note, your new hire date is August 4, 2003, therefore you will need to withdraw from the Union within 10 days of August 4, 2021.  I have attached the proper form for you to complete and returned within those 10 specific days.

Thank you.

Kathleen Dollard, Human Resources
eCATS Administrator & Payroll Supervisor
Division of Administration
Trenton, NJ 08625
TEMPORARY TELEPHONE NUMBER:  609-422-6202

2

**From:** Melica Blige <Melica.Blige@njoag.gov>
**Sent:** Friday, February 12, 2021 12:26 PM
**To:** Heather Anderson <Heather.Anderson@law.njoag.gov>
**Cc:** Andrew Reese <Andrew.Reese@law.njoag.gov>; Anna Lascurain <Anna.Lascurain@law.njoag.gov>; Kathleen Dollard <Kathleen.Dollard@njoag.gov>
**Subject:** Payroll deductions- DAG Union

Good Afternoon Ms. Anderson

Per the Memorandum of Agreement between the State of NJ and the IBEW Local 33, in order to withdraw from a dues authorization, a DAG must submit a written request to withdraw within ten days following his/her anniversary date of employment.   According to our records your anniversary date is 8/4/03.  Kindly resubmit your request, for removal from the union,  between August 5, 2021 through August 15, 2021.  Upon receipt of your request, your withdrawal will be effective on the 30th day after your anniversary date.

If you have any questions or concerns, please feel free to contact me.

Thank you,

Melica Blige
Employee Relations Administrator
Division of Administration- Human Resources
Department of Law and Public Safety
609-376-2253

1